UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | |
|---|---|
| CHAIM Y. KATZ and CHANA KATZ, | Docket No. 21-cv-2933 |
| Plaintiffs, | |
| -against- | **COMPLAINT** |
| NEW YORK CITY HOUSING PRESERVATION & DEVELOPMENT, NEW YORK CITY HOUSING DEVELOPMENT CORPORATION, SITE 5 RESIDENTIAL OWNER LLC, C&C APARTMENT MANAGEMENT LLC, and NRT NEW YORK LLC D/B/A CITI HABITATS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

------------------------------------------------------------------------x

Plaintiffs Chaim Y. Katz ("Mr. Katz") and Chana Katz ("Mrs. Katz" and when referred to collectively with Mr. Katz, the "Plaintiffs"), by their attorneys, Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, as and for their Complaint against Defendants New York City Housing Preservation & Development, New York City Housing Development Corporation, Site 5 Residential Owner LLC, C&C Apartment Management LLC, and NRT New York LLC d/b/a Citi Habitats (together, "Defendants"), allege as follows:

**Preliminary Statement**

1.     "Families, the backbone of American society, are turned away from houses and apartments simply because they have children." *See* 134 Cong. Rec. H4603-02 (Daily Ed. June 22, 1988) (statement of Rep. Pepper).

2.     Plaintiffs, who are lifelong members of the Orthodox Jewish community on the Lower East Side of Manhattan, have a sincerely held religious belief that having many children is both an obligation and blessing from God.

1

3.  The noted Jewish scholar and philosopher Maimonides explained the religious requirement that Orthodox Jews build large families as follows:

> Although a person has fulfilled the Mitzvah of being fruitful and multiplying, he is bound by a Rabbinic commandment not to refrain from being fruitful and multiplying as long as he is physically potent. For anyone who adds a soul to the Jewish people is considered as if he built an entire world. (Rambam, Hilchot Ishut, 15:16).

4.  Because of these beliefs, the Plaintiffs were denied affordable housing by Defendants, who operate and manage two affordable housing lotteries in New York City, and who admitted that they denied Plaintiffs' applications because Plaintiffs' immediate family purportedly has too many members.

5.  Accordingly, for the reasons set forth herein, Plaintiffs assert causes of action under the New York State Human Rights Law, the New York City Human Rights Law, the Federal Fair Housing Act, and the First Amendment to the United States Constitution.

## Parties

6.  Plaintiff Chaim Katz is an individual residing in New York County, New York.

7.  Plaintiff Chana Katz is Mr. Katz's wife, and is an individual residing in New York County, New York.

8.  Defendant New York City Housing Preservation & Development ("HPD") is a City agency charged with supervising affordable housing programs throughout the City of New York.

9.  Defendant New York City Housing Development Corporation ("HDC") is a City agency charged with supervising affordable housing programs throughout the City of New York.

10. Defendant Site 5 Residential Owner LLC ("Site 5") is a limited liability company organized under the laws of the State of New York.

11. Defendant C&C Apartment Management LLC ("C&C") is a limited liability company organized under the laws of the State of New York.

12. Defendant NRT New York LLC d/b/a Citi Habitats ("Citi Habitats") is a limited liability company organized under the laws of the State of New York.

## Jurisdiction and Venue

13. Jurisdiction is conferred upon this Court pursuant to the following provisions: 28 U.S.C. § 1331, which authorizes original jurisdiction in the District Court of all civil actions arising under the Constitution, laws or treaties of the United States; 28 U.S.C. § 1343(a)(3), which grants jurisdiction to the District Court for any action to recover damages or to secure equitable or other relief under an act of Congress providing equal rights of citizens or of all persons within the jurisdiction of the United States; and 28 U.S.C. § 1367, which grants jurisdiction to the District Court over the state law claims.

14. Venue is proper pursuant to 28 U.S.C. § 1391(e), which provides that a civil action may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred.

## Factual Allegations

15. Plaintiffs are Orthodox Jewish individuals and have been active members of the Orthodox community in New York's Lower East Side their entire lives.

16. Plaintiffs' families have a long history of living in the Lower East Side going back to the 1800s.

17. Plaintiffs and their family members have a sincerely held religious belief that having a large family is both an obligation and a blessing from God.

18. This belief is a central tenet of Orthodox Judaism.

19. A 2013 Pew Research report found that Orthodox Jewish individuals ages 40-59 had an average of 4.1 children in their lifetime—substantially more than the average of 1.7 children

born to all other Jewish individuals in the United States in that same age group. *See* https://www.pewforum.org/2015/08/26/a-portrait-of-american-orthodox-jews/

20. Indeed, according to the study nearly half (48%) of Orthodox Jewish families have comparatively large families of four children or more.

21. Hence, Orthodox Jewish families are at an inherent disadvantage in applying for affordable housing lotteries, because even the average family, with 4.1 children, would exceed the maximum family size requirement of 6 individuals.

*The New York City Housing Connect Program*

22. New York City Housing Connect is a program operated by HPD and HDC, which bills itself as "New Yorkers' portal to find and apply for affordable housing opportunities across the five boroughs of New York City."[1]

23. The Housing Connect program operates as an online lottery system through which applicants can seek affordable housing.

24. Plaintiffs submitted applications in two affordable housing lotteries through Housing Connect (the Essex Crossing Site 5 lottery and the 118 Orchard Street lottery), and both applications were ultimately rejected due to Plaintiffs' family size.

*The Essex Crossing Site 5 Lottery*

25. In 2017, the Essex Crossing Site 5 advertised on Housing Connect that it was accepting applications for 104 newly constructed units at 145 Clinton Street on the Lower East Side of Manhattan (the "Site 5 Lottery").

26. Site 5 is the owner and developer of the Site 5 Lottery.

---

[1] *See* NYC Housing Preservation & Development, *Affordable Housing: NYC Housing Connect*, https://www1.nyc.gov/site/hpd/services-and-information/housing-connect-rentals.page (last visited Jan. 15, 2021).

27. The Site 5 Lottery advertised a preference for residents of the Manhattan Community Board 3 (The Lower East Side), such that 50% of the affordable housing units were to go to them.

28. On or about March 2, 2017, Plaintiffs timely applied to the Site 5 Lottery through the Housing Connect program for a three-bedroom apartment.

29. At the time that Plaintiffs applied to the Site 5 Lottery, their immediate family consisted of seven (7) individuals, with Plaintiffs' five (5) children being under the age of 18.

30. At the time of the application, one of Plaintiffs' children was soon to begin living in a dormitory and, accordingly, only four (4) of Plaintiffs' children would be living with Plaintiffs in the apartment sought.

31. At the time of Plaintiffs' application, the Katz family met the requirements of the Site 5 Lottery.

32. Plaintiffs properly and correctly listed their family size on their application.

33. Initially, Plaintiffs' application was selected for the Site 5 Lottery.

34. However, on or about July 21, 2017, Site 5 apparently reversed course and denied Plaintiffs' application, sending two (2) ineligibility letters, through its management company, C&C (the "July 21, 2017 Ineligibility Letters").

35. In one of the ineligibility letters, Site 5, through C&C, denied Plaintiffs' application and stated: "[n]o units to accommodate family size." (*See* a true and correct copy of the July 21, 2017 Ineligibility Letters, with confidential information redacted, annexed as Exhibit "A").

36. In the other ineligibility letter, Site 5, through C&C, denied Plaintiffs' application and stated: "[n]o remaining units are available within the project to accommodate your household size." (*See id.*)

37. Thereafter, on or about July 30, 2017, in accordance with the procedure outlined in the ineligibility letters, Plaintiffs appealed these determinations to Site 5, through C&C, within ten (10) business days, and requested review of the application to the Site 5 Lottery.

38. In Plaintiffs' appeal, they explained that (i) their family size was the result of their fervent religious convictions; (ii) their children share bedrooms; (iii) a three-bedroom apartment was sufficient for the Katz family's needs; and (iv) certain of their children would be entering dorm life shortly and, therefore, would not be regularly inhabiting the apartment ("Plaintiffs' July 2017 Site 5 Appeal"). (*See* a true and correct copy of the Plaintiffs' July 2017 Site 5 Appeal, annexed as Exhibit "B").

39. However, on or about September 25, 2017, Site 5, through C&C, denied the Plaintiffs' July 2017 Site 5 Appeal, claiming that "[t]he property [did] not have an available unit to accommodate the household size" even though Mr. Katz clearly explained that the unit did in fact accommodate his family ("Site 5's September 25, 2017 Denial"). (*See* a true and correct copy of Site 5's September 25, 2017 Denial, with confidential information redacted, annexed hereto as Exhibit "C").

40. In accordance with the procedure outlined in Site 5's letter denying Plaintiffs' appeal, Mr. Katz submitted a complaint to HDC, which reiterated the reasons stated in his appeal to Site 5 ("Plaintiffs' HDC Complaint"). (*See* a true and correct copy of Plaintiffs' HDC Complaint, with confidential information redacted, annexed as Exhibit "D")

41. On or about November 2, 2017, HDC denied Mr. Katz's complaint regarding the Site 5 Lottery stating, amongst other things, that "HDC will only review complaints by rejected applicants to determine if there are any grounds to question or intervene in an owner's decision. Having reviewed the facts of your case, HDC has found no such grounds." (*See* Ex. D).

6

*New York State Division of Human Rights' Probable Cause Finding of Unlawful Discrimination*

42. Mr. Katz filed a complaint with the New York State Division of Human Rights ("DHR") and U.S. Department of Housing and Urban Development ("HUD") alleging that HDC and Site 5 discriminated against Mr. Katz because of his religion and familial status.

43. In his complaint to DHR and HUD, Mr. Katz alleged that the failure of HDC and Site 5 to take into consideration the larger family sizes of the Orthodox residents of the Lower East Side resulted in a discriminatory disparate impact, which disproportionately affected Orthodox Jewish individuals based upon their religious beliefs and tenets. Mr. Katz also alleged that this was an ongoing policy, practice, and custom, as he had previously been denied affordable housing in another HDC lottery on the same grounds.

44. On or about March 27, 2019, DHR determined that probable cause exists to believe that HDC and Site 5 engaged in the unlawful discriminatory practice complained of by Mr. Katz. (*See* a true and correct copy of the DHR probable cause determination ("DHR PC Determination"), with confidential information redacted, annexed hereto as Exhibit "E").

45. The basis for the DHR PC Determination was its finding that Site 5's occupancy policy, which limits occupancy to two persons per bedroom, was unsupported and had a disparate impact on families with minor children. (*See id.*) Specifically, the DHR PC Determination stated that:

> Respondents' excuse that without the two persons bedroom rule, the subject building would be overcrowded, and its water, sewer, and electrical systems would be overloaded appears to be without merit as the premises is part of an enormous, brand-new multibillion-dollar development, which would have adequate water, sewer, and electrical to service its residents.

*See id.*

46. Furthermore, the DHR PC Determination found that the Site 5 occupancy restrictions were more restrictive than the local code. For example:

> The smallest three-bedroom apartment in Respondent Site 5's building is 1,108 square feet. The NYC Code requires 80 square feet per person. Under the NYC Code, [Mr. Katz's] family size of seven would fit well within the guidelines as each person would have 158 square feet of living area.

*See id.*

47. Thus, the DHR held that defendants HDC and Site 5 "failed to justify the imposition of their restrictive occupancy rules" and that the "rule of limiting occupancy to two persons per bedroom may have a disproportionate impact on families with children and limit their housing opportunities." *See id.*

48. Subsequently, on or about March 2, 2020, Mr. Katz requested that his complaint with the DHR be dismissed for administrative convenience because he wished to pursue his claims in court.

49. As a result, on November 30, 2020, Mr. Katz's case with the DHR was dismissed for administrative convenience.

*The Orchard Lottery*

50. In 2019, Citi Habitats advertised available affordable housing units at 118 Orchard Street, New York, New York (the "Orchard Lottery") on Housing Connect.

51. Upon information and belief, Citi Habitats is the marketing agent for the Orchard Lottery and determines applicant eligibility.

52. On or about September 1, 2019, Plaintiffs applied to the Orchard Lottery, through the Housing Connect Program, seeking a three-bedroom apartment.

53. At the time Plaintiffs applied to the Orchard Lottery, their family size was eight (8) individuals, with Plaintiffs' six (6) children being under the age of 18.

54. At the time of the application, one of Plaintiffs' children was soon to begin living in a dormitory and, accordingly, only five (5) of Plaintiffs' children would be living with Plaintiffs in the apartment sought.

55. Initially, Plaintiffs' application was selected for the Orchard Lottery.

56. However, on or about November 6, 2019, Citi Habitats reversed course and denied Plaintiffs' application by sending them an ineligibility notice, which stated that Plaintiffs were ineligible because "[t]here [were] not units in the project that meet [Katz's] household size requirements." (*See* a true and correct copy of the November 6, 2019 ineligibility notice, annexed hereto as Exhibit "F").

57. Thereafter, in accordance with the procedure outlined in the ineligibility notice, Mr. Katz appealed to Citi Habitats within ten (10) business days to request a review of his application to the Orchard Lottery.

58. On or about November 21, 2019, Citi Habitats responded to the appeal, stating that "[u]nfortunately we do not set the rules of household size allowed in an apartment; HPD is the agency that does." (*See* a true and correct copy of Citi Habitats' response to Plaintiffs' appeal, annexed as Exhibit "G").

59. Further, that same day, Citi Habitats sent a rejection notice stating that Plaintiffs' household size does not meet the eligibility guidelines (the "November 21, 2019 Rejection Notice"). (*See* a true and correct copy of the November 21, 2019 Rejection Notice, with privileged information redacted, annexed as Exhibit "H").

60. Mr. Katz next appealed to Citi Habitats seeking reconsideration, in accordance with the procedure outlined in Citi Habitat's rejection notice.

61. On or about December 2, 2019, Mr. Katz received a notice from Citi Habitats denying his appeal.

62. In accordance with the procedures set forth in the appeal rejection notice, Mr. Katz filed a complaint with HPD.

63. On or about December 16, 2019, Mr. Katz received a response from HPD, which did not find cause to overturn the decision regarding Plaintiffs' application for the Orchard Lottery.

*Defendants' Policy Has A Disparate Impact Upon Orthodox Jewish Individuals.*

64. Defendants' rejections of Plaintiffs' applications based upon the size of the Katz family constitute unlawful discrimination.

65. Defendants' rejections of the Katz family's applications evidences a disparate impact upon observers of the Orthodox Jewish faith.

66. There is no legitimate, non-discriminatory reason for Defendants' disparate application of their policies.

67. Defendants' rejections of Plaintiffs' family on the basis of religion and family status and size was not based upon any legitimate rule, regulation, law, or safety concern about the number of individuals who may reside in a dwelling. Indeed, there is a custom and policy of allowing an approved applicant to either request a transfer to a larger apartment if the number of family members increases or, if a larger apartment is unavailable, remain in the apartment *regardless* of family size or growth.

68. This existing policy supports an inference that Defendants' treatment of Plaintiffs and their family is based upon their religious convictions along with their family status and size.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Violation of New York State Human Rights Law, 15 N.Y. Exec. L. § 290 *et seq.*)**

69. Plaintiffs hereby repeat and reallege each of the foregoing allegations as if fully set forth herein.

70. New York State Executive Law § 296(5) prohibits discrimination against any persons in the terms, conditions, or privileges of the rental or lease of a housing accommodation or an interest therein or in furnishing of facilities in connection therewith on the basis of, amongst other things, familial status.

71. Defendants' denial of Plaintiffs' applications on the basis of familial status, as mandated by the Plaintiffs' family's religious beliefs, is a violation of Article 15, Section 296 of the New York State Executive Law.

72. As a result of the foregoing, Plaintiffs have suffered, and will continue to suffer, irreparable harm and financial damages.

73. Plaintiffs are entitled to injunctive relief, together with general, special, actual and/or statutory damages, as well as punitive damages, in a sum to be determined at trial, and an award of attorneys' fees and costs.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Violation of the New York City Human Rights Law**
**N.Y.C. Admin. Code § 8-101 *et seq*.)**

74. Plaintiffs hereby repeat and reallege each of the foregoing allegations as if fully set forth herein.

75. Section 8-107(5)(a)(1) of the New York City Administrative Code prohibits any owner or lessor or other person having the right to sell, rent or lease, or approve the sale, rental or lease of a housing accommodation to discriminate on the basis creed or religion, by refusing to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any such person a housing accommodation or interest therein or to discriminate in the terms, conditions or privileges of the sale, rental or lease of such housing accommodation or interest therein.

76. Defendants violated Section 8-107(5)(a)(1) of the New York City Administrative Code by discriminating against the Plaintiffs on the basis of their family size, as mandated by their religious beliefs.

77. As a result of the foregoing, Plaintiffs have suffered, and will continue to suffer, irreparable harm and financial damages.

78. Plaintiffs are entitled to injunctive relief, together with general, special, actual, and/or statutory damages, as well as punitive damages, in a sum to be determined at trial, and an award of attorneys' fees and costs.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Violation of the Fair Housing Act, 42 U.S.C. § 3604)**

79. Plaintiffs hereby repeat and reallege each of the foregoing allegations as if fully set forth herein.

80. The Fair Housing Act makes it unlawful, among other practices, to "make unavailable or deny[] a dwelling," to an individual on the basis of familial status. 42 U.S.C. § 3604(a).

81. Defendants violated the Fair Housing Act by creating and implementing a policy and practice that had a negative disparate impact and disproportionate effect on the Katz family due to their religious beliefs.

82. Section 3602(k) of the FHA defines familial status as one or more individuals under the age of 18 being domiciled with (1) a parent, legal custodian, or (2) the designee of such parent or legal custodian, with the written permission of such parent or legal custodian.

83. Defendants' denial of Plaintiffs' application on the basis of Plaintiffs' family size is a violation of, *inter alia*, Section 3604 of the Fair Housing Act.

84. Defendants adopted and implemented a policy and practice that made affordable housing unavailable to the Katz family due to its size and familial status.

85. Defendants' willful infringement of the Fair Housing Act, if not enjoined, will cause Plaintiffs to suffer irreparable harm. Plaintiffs are also entitled to general, special, actual, and/or statutory damages, as well as punitive damages, in a sum to be ascertained, according to proof at trial.

86. As a result of the foregoing, Plaintiffs have suffered, and will continue to suffer, irreparable harm and financial damages.

87. Plaintiffs are entitled to injunctive relief, together with general, special, actual and/or statutory damages, as well as punitive damages, in a sum to be determined at trial, and an award of attorneys' fees and costs.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Violation of the First Amendment to the U.S. Constitution)

88. Plaintiffs hereby repeat and reallege each of the foregoing allegations as if fully set forth herein.

89. Because the Defendants' policies exclude Orthodox Jewish families from obtaining subsidized housing, the Defendants' policy of limiting family size conveys a government message of disapproval and that those of the Orthodox Jewish faith are not permitted to participate.

90. The Defendants' conduct, as set forth above, violates the First Amendment of the U.S. Constitution.

91. As a result of the foregoing, Plaintiffs have suffered, and will continue to suffer, irreparable harm and financial damages.

92.     Plaintiffs are entitled to injunctive relief, together with general, special, actual and/or statutory damages, as well as punitive damages, in a sum to be determined at trial, and an award of attorneys' fees and costs.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(A) A jury trial on all issues so triable;

(B) Judgment against Defendants declaring that the actions of the Defendants have violated 42 U.S.C. § 3604(f)(1);

(C) Judgment against Defendants declaring that the actions of the Defendants have violated New York State Human Rights Law § 296;

(D) Judgment against Defendants declaring that the actions of the Defendants have violated New York City Human Rights Law § 8-101, *et seq.*;

(E) Judgment against Defendants declaring that the actions of the Defendants have violated the First Amendment of the U.S. Constitution;

(F) Compensatory damages in the amount to be determined at trial;

(G) Punitive damages in an amount to be determined at trial;

(H) Attorneys' fees pursuant to 42 U.S.C. § 3613(C)(2), New York State Human Rights Law § 297(10), and New York City Human Rights Law § 8-502, and any other applicable statute, rule, or law;

(I) Costs and disbursements incurred with this action, including reasonable attorney's fees and expenses under any statute or law authorizing the recovery of such costs, disbursements, fees, and expenses; and

(J) Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all issues so triable.

Dated:  April 6, 2021

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA WOLF & CARONE, LLP**

By:   <u>/s/ *Justin T. Kelton*</u>
      Justin T. Kelton
      Eric Broutman
      Taylor L. Cary
      One Metrotech Center, Suite 1701
      Brooklyn, New York 11201
      (718) 215-5300
      jkelton@abramslaw.com
      ebroutman@abramslaw.com
      tcary@abramslaw.com
      *Attorneys for Plaintiffs Chaim Y. Katz and Chana Katz*