## NOTICE TO PARTIES IN HOUSING CASES
## WHERE PROBABLE CAUSE HAS BEEN FOUND

Re:  Chaim Y. Katz v. New York City Housing Development Corporation, Site 5 Residential Owner LLC
SDHR Case No. 10197632
HUD Charge No. 02-19-1509-8

To the Parties Listed Below:

The Division has made a determination that PROBABLE CAUSE exists to believe that Respondent(s) in the above-referenced case has engaged in an unlawful discriminatory practice. The parties now have the right to choose whether to have a hearing at the Division or to commence a court action.

If the parties wish to proceed at the Division, no further action need be taken. A notice for a public hearing before an Administrative Law Judge will be issued by the Division. In accordance with § 297.4.a of the Human Rights Law (N.Y. Exec. Law, art. 15), a Division attorney will be appointed to present the case in support of the complaint at the public hearing, or the case may be presented by Complainant's attorney.

Commencement of a court action is provided for by § 297.9 of the Human Rights Law as follows:

> Any party to a housing discrimination complaint shall have the right within twenty days following a determination of probable cause pursuant to subdivision two of this section to elect to have an action commenced in a civil court, and an attorney representing the division of human rights will be appointed to present the complaint in court, or, with the consent of the division, the case may be presented by complainant's attorney.

If a court action is elected, you must file written notification with the Office of General Counsel, New York State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. The notice, to be effective, must be received by the General Counsel within the twenty (20) days referred to above. The office facsimile number is (718)741-8102. A copy of the written notification must also be sent within the same twenty (20) days to Chief Calendar Clerk, New York State Division of Human Rights, at the same street address, and to all parties and their attorneys, if any, a listing of which is found on the attached page.

TO:

Chaim Y. Katz
██████████

New York City Housing Development Corporation
Attn: Legal Division
110 William St., 10th Floor
New York, NY 10038

Site 5 Residential Owner LLC
Attn: Legal Division
1735 Park Avenue, Suite 300
New York, NY 10035

Site 5 Residential Owner LLC
Attn: Legal Division
The Limited Liability Company
150 Myrtle Avenue, Suite 2
Brooklyn, NY 11201

Law Office of Kenneth G. Roberts, P.C.
419 Park Avenue South, 18th Floor
New York, NY 10016



**Division of Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>CHAIM Y. KATZ,<br>Complainant,<br>v.<br><br>NEW YORK CITY HOUSING DEVELOPMENT CORPORATION, SITE 5 RESIDENTIAL OWNER LLC,<br>Respondents. | DETERMINATION AFTER INVESTIGATION<br><br>Case No. 10197632 |

Federal Charge No. 02-19-1509-8

On 10/24/2018, Chaim Y. Katz filed a verified complaint with the New York State Division of Human Rights ("Division"), charging the above-named Respondents with an unlawful discriminatory practice relating to housing because of creed, familial status in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

After investigation, the Division has determined that it has jurisdiction in this matter and that PROBABLE CAUSE exists to believe that the Respondents have engaged in or are engaging in the unlawful discriminatory practice complained of.

Pursuant to the Human Rights Law, this matter is recommended for public hearing. The parties will be advised of further proceedings.

Dated: March 27, 2019
Bronx, New York

STATE DIVISION OF HUMAN RIGHTS

By: _____
Iris Carrasquillo
Acting Director

## Information to the Parties
## Following Determination of Probable Cause

The New York State Division of Human Rights ("Division") is the administrative agency charged with enforcing the New York State Human Rights Law. The Division investigates complaints of discrimination, determines whether there is probable cause to believe that discrimination has occurred, and conducts a public hearing of the complaint where probable cause is found. Probable cause has been found in this case, and the matter will now proceed to a public hearing before an Administrative Law Judge.

If a Complainant does not have a private attorney, the Division will assign an attorney to present the case in support of the complaint. The Division attorney at all times represents the Division, not the Complainant personally. Substitutions and reassignments of Division attorneys and Administrative Law Judges are within the Division's discretion.

The Division generally schedules public hearings for two consecutive days, which may be allocated with one day each for the presentation of Complainant's and Respondent's cases. There is no formal discovery. Parties may exchange document and witness lists at the preliminary conference, which will take place during the first hour of the first day of the public hearing.

Prior to receiving the notice setting out the date and time of the public hearing, parties may receive notice of a Pre-Hearing Settlement Conference, which will be scheduled several weeks before the public hearing. If Respondent wishes to make an offer of settlement prior to that time, Respondent should contact the Hearing Attorneys Unit at (718) 741-8398.

The Division has its own Rules of Practice which can be found on the Division's website, www.dhr.ny.gov. The New York Civil Practice Law and Rules and the Federal Rules of Procedure and Evidence are inapplicable to Division proceedings. Please cite to New York State case law wherever possible in all submissions to the Division.

The parties have a continuing obligation to keep the Division advised as to any changes in the case including:

1. Changes in name, address and/or telephone number of the parties and successors in interest.
2. Commencement of proceedings in another forum.
3. Settlement of the case.

Any of the above information should be timely provided to the Division, IN WRITING on the attached form to the following by mail or fax:

**New York State Division of Human Rights**
**Attn: Chief Calendar Clerk**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-8333**

Information to the Parties
Page 2

If the Complainant wishes to seek dismissal of this matter to proceed in an alternate forum, an application should be filed with the Chief Calendar Clerk at the above listed address, preferably within twenty (20) days of the date of this determination. (For court election for housing cases, please see the Notice to Parties in Housing Cases, also enclosed.)

The parties also have a continuing obligation to maintain certain information, records, etc., as follows:

1. Parties must keep track of the whereabouts of their witnesses.
2. Parties are obligated to identify and preserve all evidence relating to the case, including evidence relating to any incidents which relate to the case that occur after the Division makes a finding of probable cause, and including all evidence whether for or against that party's interests.
3. Parties are responsible for recording and keeping evidence relating to any increase or reduction in damages.

Finally, if you would like to request a copy of the investigation file, please do so promptly. Put your request in writing to:

New York State Division of Human Rights
Attn: FOIL Officer
One Fordham Plaza, 4th Floor
Bronx, New York 10458
Fax: (718) 741-3217
Email: foil@dhr.ny.gov

Please note that your request for documents, or the Division's response or date of response thereto, will not affect the date of the hearing, and cannot be used to request a postponement or rescheduling of the hearing. Costs for copying, established by statute, will apply.

## FREQUENTLY ASKED QUESTIONS

The New York State Human Rights Law and the Division's Rules of Practice outline the policies and procedures that govern hearings administered by the New York State Division of Human Rights. The Law and the Rules are available on the Division's website at www.dhr.ny.gov. Parties may consult with their own attorneys on questions about and interpretations of the Law and/or the Rules. The following are general responses to frequently asked questions. The responses are not legal advice, and should be used for informational purposes only.

## Before the Public Hearing

1. **I recently received a "Determination After Investigation" letter from the Division, stating that there is probable cause to believe that discrimination has occurred in my case and that the case will be scheduled for a public hearing. What does this mean and when will the case be scheduled for a hearing?**

    Where the Division finds probable cause after investigation, the Human Rights Law requires that the entire case be heard at a public hearing before an administrative law judge, where all relevant evidence is presented and the testimony of witnesses is taken under oath and subject to cross-examination. You will receive written notice from the Division of the hearing date, time, and location of the hearing. The hearing usually is scheduled to occur 4 to 6 weeks from the date of the written notice. Prior to receiving this notice, you may receive notice of a Pre-Hearing Settlement Conference, where your case will come before an Administrative Law Judge for the purpose of exploring settlement.

2. **Do we pick the dates for the hearing?**

    No. The Division selects dates for a public hearing, and notifies the parties in writing through the notice of hearing.

3. **What do I bring to the hearing, such as documents, witnesses, etc.?**

    The parties should identify and bring all documents and witnesses relevant to their claims and/or defenses. The parties should review the notice of hearing, which is issued via mail.

4. **Now that the case is scheduled for a hearing, what happens next?**

    The case proceeds to a public hearing on the scheduled date. The Complainant may consult with his or her own attorney. If Complainant does not have an attorney, please wait to be contacted by a Division attorney, who will present the case in support of the complaint. Further, the parties should review the notice of hearing, which is issued via mail.

5. **When should an answer be filed and can it be faxed?**

    An answer should be served by the respondent(s) on all parties and the Administrative Law Judge at least two (2) business days before the public hearing. This is a statutory requirement. All formal papers, including but not limited to the answer, must be submitted via personal service, mail, or fax (with an original to follow) for proper docketing and timely filing. Formal papers submitted via electronic mail are deemed courtesy copies and do not constitute proper service.

## Adjournments

6. **What should I do if I have a conflict with the hearing date that is scheduled?**

   You should submit, as early as possible, a written request for an adjournment of the hearing, stating the basis for your request, to all parties and the Administrative Law Judge.

7. **On what basis will the judge grant an adjournment? Will I receive a letter with new dates?**

   Adjournment of a public hearing is granted only for actual engagement before a higher tribunal on the specific dates of the public hearing, or for other good cause shown as determined by the Division. If a case is adjourned, the Division will schedule a new hearing date.

## Public Hearing

8. **What happens if I do not appear for the hearing?**

   A complainant's failure to appear at a public hearing may result in a dismissal of a complaint, and a respondent's failure to appear may result in a default finding against a respondent.

9. **How long is the hearing?**

   Public hearings are generally scheduled for two (2) days.

10. **Can I speak with the Judge?**

    *Ex parte* communication (*i.e.*, by only one party) with the judge assigned to the case is strictly prohibited. The parties may jointly request a conference with a judge through the Office of Administrative Law Judges.

## Additional Information

11. **I have more questions. Where can I call for more information?**

    If necessary, you may call Shirese Taylor, Chief Calendar Clerk, at (718) 741-8400. We do request that you call <u>only if the situation is urgent</u>. Please do not call to ask the status of your case; the Division will contact *you* at the appropriate time. Frequent telephone contact can interfere with the prompt processing of your hearing. Please do not call your regional office; they will not have information on the hearing process.

**IF YOU MOVE, SETTLE, OR INTEND TO CHANGE FORUM**
**Complete and return this form to:**

**New York State Division of Human Rights**
**Attn: Chief Calendar Clerk**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-8333**

Re:   Chaim Y. Katz v. New York City Housing Development Corporation, Site 5 Residential Owner LLC
Case No. 10197632

**New name, address, and/or telephone:**

NAME: _____

ADDRESS: _____

_____

TELEPHONE: _____

I WILL BE AT MY NEW ADDRESS ON OR AFTER: _____

Please indicate below the name, address, and telephone number of a person who may be contacted and will know your whereabouts if the Division cannot locate you:

_____

_____

_____

**Commencement of proceedings in another forum, or settlement:**
Below please indicate, for other proceedings, the name of the forum and the name, address, and telephone number of the attorney handling the matter. For settlement, please explain briefly the circumstances under which the case was settled, and whether the terms have been complied with, and give a contact telephone number and sign below.

_____

_____

_____

_____       _____
Telephone Number                                        Signature

# NEW YORK STATE
# DIVISION OF HUMAN RIGHTS

TO:     Files

FROM:   Iris Carrasquillo
        Acting Director

REGION: Housing Investigation
        Unit

DATE: March 27, 2019

SDHR CASE NO: 10197632-18-H-CF-H

Federal Charge No. 02-19-1509-8

SUBJECT:    Chaim Y. Katz v. New York City Housing Development Corporation, Site 5
            Residential Owner LLC

## FINAL INVESTIGATION REPORT AND BASIS OF DETERMINATION

### I.     CASE SUMMARY

This is a verified complaint, filed by Complainant, Chaim Y. Katz, on 10/24/2018. Complainant who is Jewish and has 5 children under the age of 18, charges Respondents with unlawful discriminatory practices in relation to housing because of creed, familial status.

Complainant is a lottery applicant for an affordable housing rental apartment.

Respondent Site 5 Residential Owner LLC ("Site 5"), is the the owner and developer of the subject property. Respondent New York City Housing Development Corporation ("HDC"), works with developers to create and market affordable housing, including the subject property. HDC also provides a sales platform for these affordable hosuing units.

### II.    SUMMARY OF INVESTIGATION

Complainant's Position:

Complainant is an applicant for an affordable housing apartment whose application was denied. Complainant sought a three-bedroom apartment for his family of seven, which includes his wife and five minor children, at the subject property, known as Essex Crossing, which is located at 145 Clinton Street on the Lower East Side of Manhattan. Complainant alleges that Respondents engaged in unlawful familial status discrimination when they rejected his application.

On 3/2/2017, Complainant applied for the apartment, offered by Respondent Site 5 Residential Owner LLC ("Site 5"), through an online lottery system known as NYC Housing

Connect, which is operated by Respondent New York City Housing Development Corporation ("HDC").

Complainant's application was drawn in the lottery. However, Complainant was informed by Respondent Site 5 that his application was rejected because his family size exceeds six persons, which Respondents assert is the maximum number of persons allowed under their guidelines for a three-bedroom apartment. Complainant appealed the decision twice and was denied both times.

Complainant asserts that he has been subjected to familial status discrimination since families, such as Orthodox Jews, with many children, are adversely affected by Respondents' rules.

Complainant alleges that he was discriminated against, in the year prior to this incident, in another HDC lottery when his family of seven was disqualified for housing at another development on the Lower East Side, owned by Alphabet Plaza Building.

Respondent New York City Housing Development Corporation's ("HDC") Position:

Respondent HDC, through Alex Medina, Vice President of Portfolio Management, denies that the allegations of discrimination. HDC did not discriminate against Complainant based on his membership in a protected class. HDC simply followed the rules and regulations as stated in city, state, and federal law.

HDC does not own, manage, or operate the complex to which the Complainant applied. Decisions regarding appropriate unit sizes are made by the managing agent and the project operator, not by HDC. HDC contributed financing to the project [subject property]; however, the project is privately owned by Site 5, which is responsible for their own tenant selection.

Site 5 (not HDC) developed the Marketing Plan for the project, in conformity with DHC's Occupancy Guidelines (see Exhibit A) and the HDC Marketing Handbook, which is consistent with all applicable federal, state and local laws. The project's advertisement clearly indicates that the maximum occupancy for a 3-bedroom apartment is six persons, which puts all applicants on notice of family size limits. As Complainant's family falls over this threshold, they clearly would not be eligible for a unit this size. This formulation was equally applied to all applicants.

HDC acknowledges that Site 5 does have a Plus One (+1) option in their general plan. However, Site 5 chose not to apply this option to this project. Site 5, (not HDC) determines if the Plus One provision will apply to a project.

The maximum occupancy limits were applied consistently for each applicant so that all applicants were treated fairly. Site 5 marketed the development and conducted an application lottery under the supervision of HDC. Applications that Site 5 approved were submitted to HDC for final approval. Applicants who are rejected are given an opportunity to appeal and then may contact HDC.

Respondent Site 5 Residential Owner LLC's Position

Respondent Site 5 through counsel denies the allegations of discrimination. Complainant alleges he was discriminated against as an applicant for a rental apartment at 145 Clinton Street, New York, New York, because there are more than six persons in his family. The complaint solely alleges that Respondent limits three bedroom units to six persons. The complaint cannot and does not allege discrimination based on familial status, marital status or presence of children. Limiting three bedroom apartments to six family members does not implicate the Human Rights Law.

Complainant's application was declined because the largest apartment in the building has only three bedrooms and there is two persons limit per bedroom, which has been applied for legitimate reasons. Without the two persons per bedroom rule, the subject building would be overcrowded, and its water, sewer, and electrical systems would be overloaded. Moreover, the rule is applied equally and consistently to all applicants.

Respondent asserts that the two persons per bedroom rule they adopted is consistent with and permitted by the rules and procedures set forth by the monitoring city agencies that govern this property, including HDC, HPD, as well as HUD.

HDC and HPD have approved Respondent's two persons per bedroom limitation in the building. HUD has ruled that the two persons per bedroom rule is reasonable under the Fair Housing Act and is in accordance with HUD's guidance [i.e., the Keating memo].

Respondent Site 5 provided the following documents in support of their position:
Exhibit A- HDC/HPD approved marketing literature for rentals in the building expressly limiting the number of occupants in a three-bedroom apartment is six people;
Exhibit B – HUD Handbook 4350.3, Occupancy Requirements of Subsidized Multifamily Housing Programs, Sec 3-23, states that owners must develop and follow occupancy standards that take into account the <u>size and number of bedrooms needed based on number of people in the family</u> and that occupancy standards serve to prevent the over or under utilization of units that can result in an inefficient use of housing assistance;
Exhibit C – HUD Fair Housing Enforcement - Occupancy Standards; Statement of Policy; Notice, page 70256, states that "<u>the department believes that an occupancy policy of two persons in a bedroom, as a general rule, is reasonable under the Fair Housing Act</u>;
Exhibit D- a copy of HUD Fair Housing Enforcement- Occupancy Standards (the "Keating Memo" indicating that the housing provider who followed the requirement acted reasonably).

Complainant's Rebuttal received via e-mail on 11/26/2019

HDC deliberately ignored the matters he brought up in his appeal. Respondent substantiated his own argument by stating that there is an incredibly limited supply of affordable housing for family units of his size.

Respondents discriminate against families with children and minority groups that tend to

have many children. Specifically, Complainant asserts that the affordable housing project in question "Essex Crossing" was meant to provide housing for residents of the Lower East Side of Manhattan, which is historically an Orthodox Jewish community. Respondents failed to take into consideration the traditionally large family sizes of the Orthodox Jewish community. Complainant asserts that Respondents' conduct is form of adverse impact discrimination against families with many children. Complainant asserts that due to this neighborhood's historical demographic background, Respondents engaged in discriminatory practices on the grounds of familial status and creed.

Complainant interview (via telephone on 2/6/2019):

Complainant acknowledged that he was aware of the family size guidelines when he applied and that the guidelines were included with his application. On the application, he changed his family size from six members to five members because he anticipated that his son would be boarding for high school.

Complainant stressed that the family size guidelines are discriminatory. He stated that the average Jewish family, as well as many Black, Latino, Catholic, and Muslim families exceed six persons. He asserts that the guidelines preclude larger families from living in the complex, and that the Essex Crossing project's purpose was to provide affordable housing to the community. He and his family are part of the community and have been denied affordable housing.

Investigator's Observations:

According to information from Respondents, the three bedroom apartments in the subject apartment building range anywhere from 1,108 square feet to 1,140 square feet.

Complainant stated in his complaint that there is another analogous case of discrimination against larger families. He says that an organization called Agudath Israel of America was in the process of developing affordable condominiums for purchase in the Borough Park section of Brooklyn. According to Complainant, HPD deemed these units unsuitable for any family of less than seven, and that HPD determined that providing units suitable for certain larger sized families while failing to provide housing for other smaller sized families constituted unlawful discrimination.

The Division reviewed "The Keating Memorandum" issued by the United States Department of Housing and Urban Development (HUD) on March 20, 1991 (Federal Register, volume 63, number 243, December 18, 1998). The Keating Memorandum noted that an occupancy policy of two persons per bedroom is reasonable. The Keating Memo further states that "...in appropriate circumstances, owners and managers may develop and implement *reasonable* occupancy requirements *based on factors such as the number and size of sleeping areas or bedrooms and the overall size of the dwelling unit*...it must be noted that in connection with a complaint alleging discrimination on the basis of familial status, the Department will *carefully examine any such nongovernmental restriction to determine whether it operates reasonably to limit or exclude families with children*. An occupancy policy which limits the

two persons per bedroom rule for the premises is unsupported and Respondents' occupancy restriction appears to have a disparate impact on families with minor children. Respondents' excuse that without the two persons per bedroom rule, the subject building would be overcrowded, and its water, sewer, and electrical systems would be overloaded appears to be without merit as the premises is part of an enormous, brand-new multibillion-dollar development, which would have adequate water, sewer, and electrical systems to service its residents. Moreover, Respondents' occupancy restrictions are more restrictive than the local code. The smallest three-bedroom apartment in Respondent Site 5's building is 1,108 square feet. The NYC code requires 80 square feet per person. Under the NYC code, Complainant's family size of seven would fit well within the guidelines as each person would have 158 square feet of living area. The local code also permits two persons to occupy a living room. Respondents have failed to justify the imposition of their restrictive occupancy rules. Moreover, Respondent HDC acknowledges that Site 5 does have a Plus One (+1) option in their general plan. However, Site 5 chose not to apply this option to this project. Respondents did not even state why the Plus One (+1) option should not apply here.

A housing practice has a discriminatory effect where it results in a disparate impact on a particular protected class. Here, Respondents' rule of limiting occupancy to two persons per bedroom may have a disproportionate impact on families with children and limit their housing opportunities.

All that is required to support a probable cause determination warranting a formal hearing on the matter is a reasonable ground for suspicion founded on facts and circumstance strong enough to warrant a cautious person in the belief that the law is being violated. There are enough factors here to create a reasonable suspicion that the law may have been violated based on the documents in the record. Whether Respondents' acts constitute unlawful discrimination should be decided by a trier of fact.

Therefore, it is recommended that the matter proceed to a public hearing, where all issues can best be resolved by an administrative law judge and where all the parties will obtain a full and fair opportunity to present their testimony under oath.

Reviewed & Approved: _____
William P. Ploski
Human Rights Specialist II

### IV. DETERMINATION

Based on the foregoing, I find Probable Cause to support the allegations of the complaint.

_____
Iris Carrasquillo
Acting Director