UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAIM Y. KATZ and CHANA KATZ,

                    Plaintiffs,

-against-

NEW YORK CITY HOUSING PRESERVATION & DEVELOPMENT, NEW YORK CITY HOUSING DEVELOPMENT CORPORATION, SITE 5 RESIDENTIAL OWNER LLC, C&C APARTMENT MANAGEMENT LLC, and NRT NEW YORK LLC d/b/a CITI HABITATS,

                    Defendants.

Case No. 1:21-cv-02933 (JLR)

**ORDER AND OPINION**

JENNIFER L. ROCHON, United States District Judge:

      Chaim Y. Katz ("Chaim") and Chana Katz ("Chana" and, together, "Plaintiffs") bring this lawsuit against the New York City Department of Housing Preservation and Development ("HPD"), the New York City Housing Development Corporation ("HDC"), Site 5 Residential Owner LLC ("Site 5"), C&C Apartment Management LLC ("C&C"), and NRT New York LLC doing business as Citi Habitats ("Citi Habitats" and, collectively, "Defendants"). ECF No. 99 (the "Amended Complaint" or "Am. Compl."). Plaintiffs allege that Defendants discriminated against them in connection with two affordable-housing applications. Plaintiffs assert claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (the "FHA"), the New York State Human Rights Law, 15 N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "NYCHRL"). Am. Compl. ¶¶ 71-93. Defendants have filed motions to dismiss the Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF Nos. 104 ("City Br."), 106 ("Essex Br."), 108 ("Citi Habitats Br."). Plaintiffs oppose these motions. ECF No. 112 ("Opp."). As set forth below, Defendants' motions are GRANTED.

1

## BACKGROUND

### I. Factual Allegations

The Court accepts as true the following facts (taken principally from the Amended Complaint) and draws all reasonable inferences in Plaintiffs' favor. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc).

Plaintiffs are a married couple whose families have a long history of living on the Lower East Side of Manhattan. Am. Compl. ¶¶ 1-2, 10-11. During some of the events underlying this case, Plaintiffs had five children; now, they have six children. *Id.* ¶¶ 11-13. HPD and HDC operate New York City Housing Connect ("Housing Connect"), an online lottery system through which people may apply for affordable housing in New York City. *Id.* ¶¶ 14-15. This case centers on applications that Plaintiffs submitted through Housing Connect to two affordable-housing lotteries, one for housing located at 145 Clinton Street (the "Essex Building"), and the other for housing located at 118 Orchard Street (the "Orchard Building"). *Id.* ¶¶ 16-17, 41.

#### A. The Essex Building

In 2017, the Essex Building advertised on Housing Connect that it was accepting applications for 104 newly constructed units. *Id.* ¶ 17. Site 5 is the owner and developer of the Essex Building, and C&C is the management company for the Essex Building. *Id.* ¶¶ 18, 26. The listing for the Essex Building lottery stated a preference for residents of Manhattan Community Board 3, with 50 percent of the affordable-housing units to be allocated to that group. *Id.* ¶ 19. Manhattan Community Board 3 includes the Lower East Side. *Id.*

On March 2, 2017, Plaintiffs timely applied through Housing Connect for a three-bedroom apartment in the Essex Building. *Id.* ¶ 20. The Essex Building limited occupancy to two people per bedroom, which meant that a three-bedroom apartment had an occupancy limit

2

of six people. *Id.* ¶ 36. At the time that they applied to the Essex Building lottery, Plaintiffs had five children, all under the age of 18. *Id.* ¶ 21. Plaintiffs, however, "expected" that one of their children would "soon begin living in a school dormitory." *Id.* ¶ 22. "Plaintiffs properly and correctly listed their family size on their application." *Id.* ¶ 24. Plaintiffs were initially "selected for" the Essex Building lottery. *Id.* ¶ 25. But on July 21, 2017, Site 5 "reversed course" and (acting through C&C) sent two ineligibility letters to Plaintiffs. *Id.* ¶ 26. In one letter, Site 5 stated: "Based on the guidelines for eligibility under this program, you are ineligible for the following reason: . . . No units to accommodate family size." ECF No. 1-1 (the "July 2017 Letters") at 1; *see* Am. Compl. ¶ 27.[1] In the other letter, Site 5 stated: "Based on the guidelines for eligibility under this program, you are ineligible for the following reason: . . . No remaining units are available within the project to accommodate your household size." July 2017 Letters at 2; *see* Am. Compl. ¶ 28.

On July 30, 2017, Plaintiffs appealed the denial through Site 5's internal procedures. Am. Compl. ¶ 29. Plaintiffs contended that "their family size was the result of their religious convictions," "their children share bedrooms," "a three-bedroom apartment was sufficient for the Katz family's needs," and "certain of their children would be entering dorm life shortly

---

[1] The July 2017 Letters were attached as an exhibit to the original complaint. *See generally* ECF No. 1. "[A]n amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Carroll v. Trump*, 88 F.4th 418, 432 (2d Cir. 2023) (citation omitted). But the Amended Complaint incorporates by reference many of the documents attached to the original complaint, including the July 2017 Letters. *See, e.g.*, Am. Compl. ¶¶ 26-28. Therefore, the Court considers the July 2017 Letters and other exhibits from the original complaint that were similarly incorporated by reference into the Amended Complaint. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam) ("When ruling on a motion to dismiss, documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." (quotation marks and citation omitted)); *see also In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." (citation omitted)).

and, therefore, would not be regularly inhabiting the apartment." *Id.* ¶ 30. On September 25, 2017, Site 5 (acting through C&C) denied Plaintiffs' appeal, explaining that "the property did not have an available unit to accommodate the household size." *Id.* ¶ 31 (brackets omitted). Chaim submitted a complaint regarding this decision to HDC, making the same arguments as before. *Id.* ¶ 32. On November 2, 2017, HDC denied Chaim's complaint, stating that "HDC will only review complaints by rejected applicants to determine if there are any grounds to question or intervene in an owner's decision. Having reviewed the facts of your case, HDC has found no such grounds." *Id.* ¶ 33.

Thereafter, Chaim filed a complaint with the New York State Division of Human Rights ("DHR") and the United States Department of Housing and Urban Development. *Id.* ¶ 34. Chaim "alleg[ed] that HDC and Site 5 discriminated against Plaintiffs because of their familial status, specifically the number of their children." *Id.*

On March 27, 2019, DHR found that probable cause existed to believe that Site 5 and HCD had engaged in an "unlawful discriminatory practice" under the NYSHRL. *Id.* ¶ 35; *see* ECF No. 1-5 (the "DHR Report") at 1, 3. The DHR Report stated that the Essex Building's two-people-per-bedroom occupancy restriction was "unsupported" and "appear[ed] to have a disparate impact on families with minor children." *Id.* at 13. "Respondents' [(that is, HDC and Site 5's)] excuse that without the two persons per bedroom rule, the subject building would be overcrowded, and its water, sewer, and electrical systems would be overloaded appear[ed] to be without merit as the premises is part of an enormous, brand-new multibillion-dollar development, which would have adequate water, sewer, and electrical systems to service its residents." *Id.* The DHR Report also noted that the "occupancy restrictions [we]re more restrictive than the local code." *Id.* The DHR Report concluded:

4

> A housing practice has a discriminatory effect where it results in a disparate impact on a particular protected class. Here, Respondents' rule of limiting occupancy to two persons per bedroom may have a disproportionate impact on families with children and limit their housing opportunities.
>
> All that is required to support a probable cause determination warranting a formal hearing on the matter is a reasonable ground for suspicion founded on facts and circumstance strong enough to warrant a cautious person in the belief that the law is being violated. There are enough factors here to create a reasonable suspicion that the law may have been violated based on the documents in the record. Whether Respondents' acts constitute unlawful discrimination should be decided by a trier of fact.
>
> Therefore, it is recommended that the matter proceed to a public hearing, where all issues can best be resolved by an administrative law judge and where all the parties will obtain a full and fair opportunity to present their testimony under oath.

*Id.* On March 2, 2020, "Chaim requested that his complaint with the DHR be dismissed for administrative convenience because he wished to pursue his claims in court." Am. Compl. ¶ 39. "As a result, on November 30, 2020, Chaim's case with the DHR was dismissed for administrative convenience." *Id.* ¶ 40.

### B. The Orchard Building

In 2019, Citi Habitats advertised available affordable-housing units in the Orchard Building on Housing Connect. *Id.* ¶¶ 41-42. On September 1, 2019, Plaintiffs applied for a three-bedroom apartment in the Orchard Building through Housing Connect. *Id.* ¶ 43. At the time of the application, Plaintiffs had six children, all under the age of 18. *Id.* ¶ 44. Plaintiffs, however, "expected" that one of their children would "soon . . . begin living in a dormitory, and, accordingly, . . . that only five of Plaintiffs' children – one of whom was an infant – would be living with Plaintiffs in the apartment sought." *Id.* ¶ 45. Plaintiffs were initially "selected for" the Orchard Building lottery. *Id.* ¶ 46. But on November 6, 2019, Citi Habitats

"reversed course" and denied Plaintiffs' application because "[t]here [were] not units in the project that met [Plaintiffs'] household size requirements." *Id.* ¶ 47 (third alteration added).

Chaim appealed the denial through Citi Habitats's internal procedures. *Id.* ¶ 48. On November 21, 2019, Citi Habitats responded that "unfortunately we do not set the rules of household size allowed in an apartment; HPD is the agency that does." *Id.* ¶ 49 (brackets omitted). That same day, Citi Habitats sent a rejection notice stating that Plaintiffs' household size did not meet the eligibility guidelines. *Id.* ¶ 50. Chaim sought reconsideration of this decision by Citi Habitats to no avail. *Id.* ¶¶ 51-52. Chaim subsequently filed a complaint with HPD. *Id.* ¶ 53. On December 16, 2019, HPD responded to Chaim, explaining that it had not found cause to overturn Citi Habitats's decision regarding Plaintiffs' Orchard Lottery apartment application. *Id.* ¶ 54.

## II. Procedural History

Plaintiffs sued Defendants on April 6, 2021. ECF No. 1. Plaintiffs "assert[ed] causes of action under the New York State Human Rights Law, the New York City Human Rights Law, the Federal Fair Housing Act, and the First Amendment to the United States Constitution." *Id.* ¶ 5; *see id.* ¶¶ 69-92. Plaintiffs identified themselves as "lifelong members of the Orthodox Jewish community on the Lower East Side of Manhattan" with "a sincerely held religious belief that having many children is both an obligation and blessing from God." *Id.* ¶ 2. Regarding the FHA, Plaintiffs alleged that: (1) Defendants "creat[ed] and implement[ed] a policy and practice that had a negative disparate impact and disproportionate effect on the Katz family due to their religious beliefs," *id.* ¶ 81; and (2) Defendants "adopted and implemented a policy and practice that made affordable housing unavailable to the Katz family due to its size and familial status," *id.* ¶ 84.

On August 8, 2022, the Court granted Defendants' motion to dismiss the initial complaint. *See Katz v. N.Y.C. Hous. Pres. & Dev.*, No. 21-cv-02933 (JPC), 2022 WL 3156178, at *1 (S.D.N.Y. Aug. 8, 2022). The Court rejected Plaintiffs' First Amendment claim because the challenged occupancy limits passed muster under rational-basis review. *See id.* at *4-5. The Court dismissed Plaintiffs' FHA religious-discrimination claim because Plaintiffs "failed to plausibly allege that the policies have created a disproportionate effect on Orthodox Jews." *Id.* at *6. Regarding Plaintiffs' FHA familial-status claim, the Court explained:

> The Katzes' familial status claim fails for much the same reasons. Before discussing why, the Court begins by addressing a point of confusion in the parties' briefing. Defendants note that at points the Complaint claims that the occupancy limits discriminate based on family size. And they point out that the Fair Housing Act prevents discrimination based on familial status, not family size. All of this is true. But the Complaint also alleges discrimination based on a permissible familial status: families with children. Taking the Complaint in the best light, the Katzes seemingly claim that the occupancy limits have a disparate impact on families with children because such families will on average be larger than families without children. In other words, the Complaint does not only base its claim on family size, which would not count as a familial status, but also on families with children, which does count.
>
> With that said, the Katzes claim still fails. They allege no facts or statistical evidence showing a significantly adverse or disproportionate effect on families with children. Indeed, they do not even allege the average family size for a family with children. Nor do they compare families with children to families without children. In the end, the Katzes include no allegations that the challenged policy resulted in or predictably will result in the underrepresentation of families with children.

*Id.* at *7 (citations omitted). Having dismissed all of Plaintiffs' federal-law claims, the Court declined to exercise supplemental jurisdiction over Plaintiffs' NYSHRL and NYCHRL

claims. *Id.* at *8. Although Plaintiffs did not request leave to amend, the Court granted Plaintiffs leave to amend *sua sponte*. *See id.*

On September 22, 2022, the case was reassigned to the undersigned. ECF No. 78. On March 6, 2023, Plaintiffs filed the Amended Complaint, asserting that Defendants had discriminated against Plaintiffs based on familial status in violation of the FHA, the NYSHRL, and the NYCHRL. Am. Compl. ¶¶ 71-93. Defendants filed motions to dismiss the Amended Complaint on April 18, 2023. City Br.; Essex Br.; Citi Habitats Br.; *see also* ECF Nos. 103, 109 (supporting declarations). Plaintiffs filed an opposition brief on June 20, 2023. Opp. Defendants filed reply briefs on July 21, 2023. ECF Nos. 115 ("City Reply"), 116 ("Essex Reply"), 118 ("Citi Habitats Reply").

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I.  Plaintiffs' FHA Claim

The FHA prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in

connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).  The statute defines "familial status" as meaning "one or more individuals (who have not attained the age of 18 years) being domiciled with (1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person."  *Id.* § 3602(k).

A plaintiff asserting a discrimination claim under the FHA may proceed under either of two theories: disparate treatment and disparate impact.  *See Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524-25 (2015) ("*Inclusive Cmtys.*"); *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016).  In the previous iteration of their complaint, Plaintiffs relied on a disparate-impact theory of familial-status discrimination.  *See, e.g.*, ECF No. 1 ¶ 81; ECF No. 64 at 12-13.  Now, under the Amended Complaint, Plaintiffs rely on a disparate-treatment theory of discrimination.  *See, e.g.*, Am. Compl. ¶¶ 76, 78; Opp. at 4-5.  Therefore, Plaintiffs must establish that Defendants "had a discriminatory intent or motive" with respect to Plaintiffs' familial status in denying their housing applications.  *Inclusive Cmtys.*, 576 U.S. at 524 (citation omitted).

Defendants contend that Plaintiffs have failed to state a plausible disparate-treatment claim.  *See* City Br. at 6-13; Essex Br. at 9-16; Citi Habitats Br. at 6-12.  The Court agrees.

"'To establish a prima facie case of discrimination under the disparate treatment theory, the plaintiff must present evidence that animus against the protected group was a significant factor' in an adverse action taken."  *Blitz v. BLDG Mgmt. Co.*, No. 20-cv-05462 (RA), 2023 WL 6162295, at *11 (S.D.N.Y. Sept. 21, 2023) (quoting *McCulloch v. Town of Milan*, 559 F. App'x 96, 98 (2d Cir. 2014) (summary order)).  A plaintiff may establish discriminatory intent using direct evidence or, where such evidence is lacking, circumstantial

9

evidence. *See Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) ("Because discriminatory intent is rarely susceptible to direct proof, litigants may make a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." (citation omitted)).

"Direct evidence of discriminatory treatment is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse action." *Fair Hous. Just. Ctr., Inc. v. Cuomo*, No. 18-cv-03196 (VSB), 2018 WL 4565152, at *11 (S.D.N.Y. Sept. 24, 2018) (quoting *United States v. Hylton*, 944 F. Supp. 2d 176, 187 (D. Conn. 2013), *aff'd*, 590 F. App'x 13 (2d Cir. 2014) (summary order)). "If a plaintiff sets forth direct evidence of discrimination, 'the burden of proof shifts to the defendants to show that they would have made the same decision regardless of discriminatory animus.'" *Id.* (quoting *Hylton*, 944 F. Supp. 2d at 187). "If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action." *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003).

The Amended Complaint does not contain any well-pleaded allegations of direct evidence of discrimination based on familial status (that is, based on being a family with children). On the contrary, the facts alleged in the Amended Complaint plainly show that Defendants repeatedly invoked the *size* of Plaintiffs' household as the basis for denying Plaintiffs' housing applications. *See* Am. Compl. ¶ 28 (quoting Site 5: "no remaining units are available within the project to accommodate your household size" (brackets omitted)); *id.* ¶ 31 (quoting Site 5: "the property did not have an available unit to accommodate the household size" (brackets omitted)); *id.* ¶ 47 (quoting Citi Habitats: "there were not units in the project that meet [Plaintiffs'] household size requirements" (brackets omitted)); *id.* ¶ 49

10

(quoting Citi Habitats: "unfortunately we do not set the rules of household size allowed in an apartment; HPD is the agency that does" (brackets omitted)). The sole reference to "family" in any of Defendants' statements was in one of the July 2017 Letters, when Site 5 informed Plaintiffs that there were "no units to accommodate family *size*," *id.* ¶ 27 (brackets omitted; emphasis added), and the accompanying July 2017 Letter made clear that the focus was on "household size," *id.* ¶ 28. In short, Plaintiffs have not alleged any direct evidence of discriminatory intent based on family status rather than the size or number of people in the household. *See, e.g.*, *Calixte v. Susan Ray Equities Inc.*, No. 21-cv-03623 (RPK), 2022 WL 118738, at *2 (E.D.N.Y. Jan. 12, 2022) (dismissing complaint where plaintiff "allege[d] no direct evidence of discrimination" because he did "not allege facts, such as statements or written policies, that directly show[ed] that defendant treated him as it did because of his [protected characteristic]").

"When, as here, a plaintiff brings a claim under the FHA that does not rest on direct evidence of landlord discrimination, [the Court] analyze[s] the claim under the familiar *McDonnell Douglas* burden-shifting framework first developed in Title VII cases." *Francis*, 992 F.3d at 73. "For a plaintiff's claim to survive a motion to dismiss in a *McDonnell Douglas* case, he must plausibly allege that he (1) is a member of a protected class, (2) suffered an adverse action, and (3) has at least minimal support for the proposition that the housing provider was motivated by discriminatory intent." *Id.* (brackets, ellipses, quotation marks, and citation omitted). The first two elements are not in dispute here. *See, e.g.*, City Br. at 10 (conceding that "Plaintiffs have minor children, and thus are part of the protected class of 'familial status'"). Instead, the parties disagree about the third element: whether Plaintiffs have "plausibly allege[d] . . . at least minimal support for the proposition that

[Defendants' rejections of Plaintiffs' housing applications were] motivated by discriminatory intent." *Francis*, 992 F.3d at 73 (citation omitted).

Plaintiffs have not met their burden. The Amended Complaint "lacks even minimal support for the proposition that . . . Defendants were motivated by discriminatory intent." *Id.* (quotation marks and citation omitted). Plaintiffs do not allege that applicants of the same household size as them, but without any minor children, were offered three-bedroom units in the lotteries. Plaintiffs allege broadly that "Defendants' rejections of Plaintiffs' applications based upon the size of the Katz family constitute unlawful discrimination," Am. Compl. ¶ 55, and that "Defendants' rejections of the Katz family's applications evidence an irrational bias against families with multiple children," *id.* ¶ 56. But on a motion to dismiss, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *accord A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, No. 19-2771, 2021 WL 5121137, at *2 (2d Cir. Nov. 4, 2021) (summary order) ("conclusory assertions . . . cannot give rise to a reasonable inference of discriminatory animus").

Plaintiffs do allege that although "the [Essex Building] apartments were not offered to Plaintiffs because they were deemed to have a six-person limit," the property actually "had a 'plus one' option in its general plan which meant seven persons could actually be accommodated," and that "Defendants chose not to apply [that option], making the apartment available only for six persons, until after Plaintiffs' probable cause determination, when all housing lotteries on [Housing Connect] . . . were changed to allow two-bedroom units to house five instead of four and three-bedroom units to house seven instead of six." Am. Compl. ¶ 67; *see also* Opp. at 5 ("Plaintiffs have alleged an inference of discrimination: Defendants['] deliberate nonapplication of the 'plus one' option suggests potential

12

discriminatory intent, thereby forming a significant factual nexus. When combined with the imposition of regulations more restrictive than local codes, these factors present a plausible basis for discrimination." (footnote omitted)).

But "because the [Amended] Complaint does not provide enough information to compare the events of which [Plaintiffs] complain[] to . . . Defendants' responses to other [housing applications], there is no factual basis to plausibly infer that . . . Defendants' conduct with regard to [Plaintiffs] was motivated by [familial-status-based] animus." *Francis*, 992 F.3d at 73-74. In other words, Plaintiffs have not adequately alleged that a similarly sized household without children was able to take advantage of the Essex Building's plus-one option. This is fatal to Plaintiffs' disparate-treatment claim. *See, e.g.*, *id.*; *Moody v. Related Cos.*, 620 F. Supp. 3d 51, 56 (S.D.N.Y. 2022) ("[I]f Plaintiffs had alleged, in a non-conclusory manner, that tenants of affordable housing units who are white are given access to amenities denied to Black and Hispanic affordable housing tenants, they would adequately allege disparate treatment. Instead, because Plaintiffs have not adequately pleaded a comparator who is similarly situated but treated better, they have not adequately pled a disparate treatment claim."); *Dickerson v. BPP PCV Owners LLC*, No. 21-cv-09003 (RA), 2022 WL 4538281, at *5 (S.D.N.Y. Sept. 28, 2022) ("Plaintiff claims that Defendant would not have called the police if she were white. . . . But she does not provide any factual support for that assertion. Notably, she does not identify any similarly situated comparators outside of her protected class who were treated more favorably than she was under comparable circumstances."); *30 Clinton Place Owners Inc. v. City of New Rochelle*, No. 13-cv-03793 (VB), 2014 WL 890482, at *3 (S.D.N.Y. Feb. 27, 2014) ("The amended complaint fails to state a claim under [a disparate-treatment] theory. . . . [P]laintiffs have not alleged [that the] Defendants treated similarly situated persons or groups differently. Indeed, plaintiffs admit the same $223 fee

applies to every dwelling unit. Thus, minorities residing in apartment buildings pay the same fee as whites residing in apartment buildings. Similarly, minorities residing in single-family homes pay the same fee as whites residing in single-family homes."); *see also Kalashnikov v. Myfield Lane Homeowners' Ass'n*, No. 20-cv-01018, 2023 WL 1862763, at *13 (D. Conn. Feb. 9, 2023) ("The fact that the Plaintiffs were not permitted to install a playset for their children while Kozo was allowed to have a trampoline for his children is not evidence that the Plaintiffs were discriminated against on the basis of their familial status. . . . To allege a claim of disparate treatment, the Plaintiffs must allege that they were treated differently than other similarly-situated individuals because of their protected status. Because Kozo also had children, the Plaintiffs were not treated differently *because* they had children."). As Plaintiffs themselves state, "the stringent 'two-person per bedroom' policy" was "indiscriminate[ly] appli[ed]," "disregard[ed] the nuances of individual familial situations," and did not "assess the family's unique circumstances." Opp. at 6. Therefore, Plaintiffs' argument is that Defendants considered Plaintiffs' household size – not its familial status – in denying Plaintiffs' housing applications.[2]

Plaintiffs then insist that discrimination based on familial *status* includes discrimination based on family *size*, and that the Court's statement to the contrary in *Katz*, 2022 WL 3156178, at *7, was dictum, *see* Opp. at 6-11. Defendants disagree on both counts. *See* City Br. at 10-12; Essex Br. at 11-14; Citi Habitats Br. at 9-11.

The law-of-the-case doctrine "forecloses reconsideration of issues that were decided – or that could have been decided – during prior proceedings." *Choi v. Tower Rsch. Cap. LLC*,

---

[2] The DHR Report does not require a different conclusion. It found only that the Essex Building's occupancy restrictions "may have a disproportionate impact on families with children." DHR Report at 13. As noted, however, Plaintiffs have abandoned their disparate-impact claim. *See supra* at 9.

2 F.4th 10, 21 (2d Cir. 2021) (citation omitted).  "It applies both to that which is expressly decided as well as to everything decided by necessary implication."  *Id.* (quotation marks and citation omitted).  The doctrine, however, does not apply to dicta.  *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 502 (S.D.N.Y. 2012); *Ryan v. Allen*, 992 F. Supp. 152, 156 (S.D.N.Y. 1998).  Although the law-of-the-case doctrine is discretionary, *see Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), courts "generally adhere to prior decisions in subsequent stages of the same case unless cogent and compelling reasons militate otherwise," *Choi*, 2 F.4th at 21 (quotation marks and citation omitted).  "Cogent and compelling reasons justifying a departure from the law of the case may include an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Id.* (quotation marks and citation omitted).

      The Court reads the previously excerpted passage in *Katz* as holding – not stating in dicta – that "the Fair Housing Act prevents discrimination based on familial status, not family size." 2022 WL 3156178, at *7.  In *Katz*, the Court began by noting that the original version of the complaint raised both family-size and family-status claims.  *See id.* ("[A]t points the Complaint claims that the occupancy limits discriminate based on family size. . . . But the Complaint also alleges discrimination based on a permissible familial status: families with children.").  The Court then held that while the family-size claims were *not* cognizable under the FHA, the family-status claims *were* cognizable.  *See id.* ("[T]he Complaint does not only base its claim on family size, which would not count as a familial status, but also on families with children, which does count.").  The Court further held that although the family-status claims were cognizable, they "still fail[ed]" because Plaintiffs "allege[d] no facts or statistical evidence showing a significantly adverse or disproportionate effect on families with children." *Id.*  Therefore, one of *Katz*'s holdings was that the familial-status protection in the FHA does

15

not encompass family size. This holding is the law of the case, and the Court adheres to it here. *See Choi*, 2 F.4th at 21.

Thus, the Court dismisses Plaintiffs' FHA claim with prejudice. The Court does not reach other issues raised by the parties, including whether Plaintiffs were otherwise qualified to rent the apartments at issue, *compare* City Br. at 12-13, *and* Essex Br. at 14-15, *with* Opp. at 5 n.3; whether occupancy standards are categorically exempt from FHA liability, *compare* City Br. at 13-16, *and* Essex Br. at 16-19, *with* Opp. at 11-12; and whether some of Plaintiffs' claims are time-barred, *compare* City Br. at 16-17, *and* Essex Br. at 7-9, *with* Opp. at 13-15; *see Katz*, 2022 WL 3156178, at *7 n.8 (likewise declining to address the latter two issues).

**II. Plaintiffs' State-Law Claims**

"It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006). Having dismissed all of Plaintiffs' federal-law claims, the Court – taking into consideration judicial economy, convenience, fairness, and comity – declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988). Plaintiffs have made no argument that the Court should do otherwise, *see generally* Opp., even after Defendants argued in their opening briefs that the Court should decline to exercise supplemental jurisdiction over the state-law claims, *see* City Br. at 18; Essex Br. at 19-20; Citi Habitats Br. at 12. Therefore, the Court dismisses Plaintiffs' state-law claims without prejudice.

## CONCLUSION

Defendants' motions to dismiss are GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions (ECF Nos. 102, 105, 107) and close the case.

Dated: February 16, 2024
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge